## No. 18,406.

DAVID BERGER *v.* CITY AND COUNTY OF DENVER.
(350 P. [2d] 192)

Decided February 29, 1960.   Rehearing denied March 28, 1960.

Mr. HARVEY P. WALLACE, Mr. DAVID BERGER, Pro se, for plaintiff in error.

Mr. JOHN C. BANKS, Mr. HAROLD J. HEAFER, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

ON January 22, 1957, sixty-four complaints were filed by the City and County of Denver against David Berger, alleging fifty-six violations of Revised Municipal Code 521.8 (relating to parking meter violations); seven violations of Code Section 521.17-1 (relating to overtime parking); and one violation Code Section 521.7-5 (relating to parking meter violations). In addition the complaints also charged sixty violations of Code Section 521-6-2 (relating to failure to respond within seven days of notice of violation), but since all of these were dismissed by the court, the validity of those charges against Berger is not before this court.

Upon trial in the municipal court, Berger was convicted of twenty-eight of the alleged violations, was fined $20 on each of eighteen thereof, and fined $20 and sentenced to one day in jail on each of the remaining ten violations. The jail sentence was suspended on each of five violations. The sum total of the penalty imposed

by this court on its judgment of conviction was $560 in fines and five days in jail. Berger appealed his convictions to the superior court of the City and County of Denver, where the trial court sustained twenty-four of the convictions and dismissed four. The penalty assessed on each of twenty-three violations was a $20 fine; on the remaining violation the court levied a fine of $20 and a sentence of five days in jail.

Berger is here on writ of error, and in his summary of argument has designated eight points upon which he relies for reversal, only one of which we consider meritorious.

The sole question presented by the record is as follows:

*Are the penalties imposed for each violation void in that they are in excess of the limitation prescribed in the schedule of fines established in the City and County of Denver?*

This question is answered in the affirmative.

It is apparent that the court imposed the fines and imprisonment under the general penalty provisions of the Denver Municipal Code, Sec. 011.10, rather than in pursuance of the fines designated in the schedule. The general penalty provision reads in part as follows:

"Whenever in any section of this Code * * * the doing of any act is required, prohibited, or declared to be unlawful *and no definite penalty is provided for a violation thereof,* any person * * * who shall be convicted of a violation of such section shall, for each offense, be fined in a sum not more than three hundred dollars ($300.00) or imprisoned not to exceed 90 days, or both so fined and imprisoned." (Emphasis supplied.)

This section is not ambiguous and provides for its use only when no definite penalty is designated for a violation. Certain it is that the court has not the option to fine in accordance with the schedule or to resort to the quoted general penalty provision. The general penalty

provision by its very terms excludes its application to offenses having specified punishments.

Its inapplicability becomes evident in view of Sec. 521.1-2 of the Code. Provision is made for offenses under traffic ordinances of the city, providing for fines or court appearances in accordance with certain schedules "for first, second, or subsequent offenses." A schedule of fines was thereafter established which in effect fixed a fine of $1.00 for a violation of either Section 521.8 or 521.17-1, relating respectively to the failure to observe the time limitations of a metered parking zone and a parking area.

Other pertinent ordinances to be found in the Municipal Code are the following:

522.2-1 — "Any person charged with an offense for which payment of a fine may be made to the traffic violations bureau shall have the option of paying such a fine within the time specified in the notice of arrest at the traffic violations bureau *upon entering a plea of guilty and upon* waiving appearance in court." (Emphasis supplied.)

522.2-2 — "The payment of a fine to said bureau shall be deemed an acknowledgment of the alleged offense, and the bureau, upon accepting the *prescribed fine,* shall issue a receipt to the violator acknowledging payment thereof and releasing the violator from further prosecution for the specific offense." (Emphasis supplied.)

523.8-1 — "If a violator of the restrictions of stopping, standing or parking under Main Division 5 of this Revised Municipal Code does not appear in response to a notice affixed to such motor vehicle within a period of 7 days, the Traffic Violations Bureau shall send *another notice* by mail to the owner of the motor vehicle to which the notice was affixed, informing him *of the violation.*" (Emphasis supplied.)

523.8-2 — "In the event such mailed notice is disregarded for a period of 5 days, a complaint shall be filed and warrant of arrest issued."

A reading of these ordinances, together with the schedule of fines, leads to the inescapable conclusion that a definite penalty has been provided for the violations of specific sections enumerated in the schedule. Notwithstanding an admitted custom of the lower court to recognize the specific penalties as applying only in the event the violator pleads guilty and pays his fine to what, in the vernacular, has been labeled "cafeteria court," the penalty, in law, can be for nothing more than the violation. It cannot be construed as a reward for prompt appearance and consent to non-appearance before a judge. One's appearance in the violation bureau is a court appearance. If the ordinance establishing a convenient *procedure* for the entry of a plea of guilty and payment of a fine is to be given validity at all, it can only be on the basis that the violator, by his own admission, stands *convicted* and has paid the *prescribed fine* for the *violation.* It would seem to follow, therefore, that on the date of the commission of the offense the penalty for each violation is specifically determined to be $1.00, with nothing more prescribed for subsequent violations.

Affirmance of the penalties assessed by the court in this case would be to sanction two sets of penalties — one applying to those who plead guilty and waive their right to appear and defend in court, the other in the nature of punitive action applicable to those who refuse to plead guilty. If the fine of $1.00 is not a specifically prescribed penalty *for the commission of the offense,* what is it, and by what authority may it be collected? The interpretation apparently indulged in by the trial courts amounts to a double standard where a citizen is assured of a definite penalty if he admits his guilt and pays promptly, but faces an uncertain fate if he dares invoke his right to trial. This we view to be a deprivation of the constitutional guaranty to each citizen of "equal protection of the law." Municipal powers and regulations are subject to both federal and state consti-

tutions, and a municipality can neither defy nor abridge the guaranties of the constitution.

In *Sturges & Burn Mfg. Co. v. Pastel,* 301 Ill. 253, 133 N.E. 762, the court held that a distinction between imprisonment and non-imprisonment of a defendant based upon whether the defendant pleaded guilty of non-payment of a fine or sought trial was arbitrary and unreasonable, and it was held that it offended against equal protection of the laws.

In the instant case Berger successfully challenged forty of the violations, and they were dismissed. He was also charged with sixty separate violations of Ordinance 521-6-2—"the failure to respond within seven days to the notice of violation"—all of which were dismissed. Assuming but not deciding that it can be made by ordinance a separate "crime" to fail to use the seven-day violations bureau procedure, the court despite the dismissal assessed the fines and jail sentences with angry admonitions indicating the penalties were not for the violations but for the failure to respond each time within seven days to pay the scheduled fine. Approval of interpretation of the ordinances as urged upon us by the City would tend to coerce persons accused of traffic violations to surrender their right to use the courts regardless of their innocense or guilt.

This is not to say that the courts are not vested with discretionary powers to deal with severe offenders, nor do we hold that a court faced with the duty of prescribing punishment cannot consider either the mitigating or aggravating circumstances surrounding the offense and mete out punishment within the prescribed limits. What we do point out is that in the instance before us no provision is made to deal with aggravated offenses as in other types of violation, such as speeding wherein a second offense calls for a penalty different from that prescribed for a first offense and a third offense requires appearance in court.

Therefore, in harmony with the views herein ex-

pressed, the conviction of plaintiff in error Berger is on the several traffic violations affirmed, but since the sentence and the fines imposed are void as in excess of the penalty duly prescribed, the cause is remanded to the superior court with directions to vacate the sentence and fines heretofore imposed and to assess valid penalties.

MR. JUSTICE MOORE and MR. JUSTICE DOYLE dissent.

MR. JUSTICE KNAUSS does not participate.

MR. JUSTICE DOYLE dissenting:

I dissent from the majority opinion for the following reasons:

*First,* I regard the legal basis for the opinion unsubstantial, technical and frivolous.

*Secondly,* it produces a palpably unjust result.

The defendant, a lawyer admitted to practice before this Court, incurred numerous parking meter tickets over a period commencing January 23, 1956, and continuing to October 16, 1956. He failed to respond to any of the notices directing him to appear in the Traffic Violations Bureau within five days and to pay $1.00. As a consequence of this failure on his part, the City and County of Denver on January 22, 1957, filed 24 charges and issued summonses and complaints against the defendant. At the trial in the Municipal Court on April 5 and 6, 1957, the defendant was found guilty of 27 separate violations of Section 521.8 of the ordinances pertaining to one hour meter over-parking and 1 violation of Section 521.17-1 prohibiting parking for more than one hour on particular streets. Defendant appealed the case to the Superior Court and following a trial there he was convicted of 23 meter violations and 1 over-parking violation. His final sentence was a fine of $20.00 on each of 24 violations plus five days in jail.

It is noteworthy that the defendant is not in a position

of having in good faith offered to pay $1.00 under protest, nor did he offer to pay $1.00 for each violation at any time. His contention throughout has been that the entire system is void and that he consequently owes nothing. Had the defendant merely tested the validity of this system of ordinances in good faith, he would stand in a different position. The equities would then favor him and he could argue that it was and is unfair to penalize him for litigating. The defendant, however, is in a very poor position to so argue in view of the fact that no good faith is apparent. He waited until the authorities grabbed him by the scruff of the neck, so to speak, and pulled him into court. Then and only then did he raise any protest about validity, so he has little ground for saying that a discrimination occurs because he is penalized more than the responsible citizen who pays his fine in accordance with the law and the notice which is given to him.

In reaching its conclusion that the City is bound by the schedule of fines promulgated pursuant to Section 521.1-2 of the Municipal Ordinances, the majority opinion merely paraphrases this ordinance and quotes companion ordinances and then holds that these lead to the "inescapable conclusion that a definite penalty has been provided" which rules out the general ordinance under which this defendant was sentenced. Examination, however, of the text of Section 521.1-2 does not lead to any such conclusion. This section provides:

"The municipal judge or judges who hear traffic cases shall designate the special offenses under the traffic ordinances of this city in respect to which payments of fines may be accepted by the traffic violations bureau in satisfaction thereof, and shall specify by suitable schedules the amounts of such fines for first, second, or subsequent offenses, provided, such fines are within the limits declared by ordinance, and shall further specify what number of such offenses shall require appearance before the court."

Sections 522.2-1 and 522.2-2 and 523.8-1 and 523.8-2, quoted in the majority opinion, read together with the section above quoted, reveal that the schedule type of fine is applicable only if the matter is disposed of administratively, that is, by payment of the $1.00 within five days. These ordinances provide that in the event of failure to take advantage of this administrative or cafeteria system a complaint will be filed and a summons will be issued. It seems to me clear from a reading of the above ordinances that once this happens all previous commitments disappear. In other words, the defendant who elects not to abide by this system is subject to all of the hazards of a court trial and particularly to the general penalty provision which is not to exceed 90 days in jail or a $300.00 fine. This system is spelled out in the ordinances very clearly and as I view it there is no justification for the view adopted by the majority that it is ambiguous. It has been clear and unequivocal for many, many years and its language has been sufficiently free of doubt to bring about the collection of many hundreds of thousands of dollars in revenue.

The fault, as I see it, in the majority opinion is its refusal to recognize the distinction between the administrative disposition of the case through the Traffic Violations Bureau and disposition in a two-day contested court trial whereby all of the guaranties of due process are invoked. In distinguishing between the single violator and the flagrant violator, both the council and the Municipal Court have found and declared that these two cases are to be treated differently.

The second justification for the Court's decision, namely, that defendant is deprived of equal protection of the laws because of the distinction which is made between the person who voluntarily pays his fine within the prescribed time and the person who fails to appear and must be summoned is premised upon the proposition that the distinction between the two types of cases is an unreasonable classification and a discrimination

against an individual who does not see fit to pay his fine. It strikes me that there is a genuine and a reasonable basis for classifying the flagrant violator and the "responsible" violator. Apart from the difference in the individual and the difference in the extent of culpability, which factors justify different treatment, there is a highly practical reason and that is maintenance of an orderly system and keeping the peace in the community. It seems to me that it is much more unreasonable to classify the flagrant violator and the "good faith" violator in the same category, and that is what the majority opinion does.

The practical problem which is faced in any system of enforcement of traffic is well stated by *Warren, Traffic Courts,* p. 67:

"While non-appearances involve a great deal of extra clerical work and represent a definite and serious leakage in traffic law enforcement, these factors may well be termed secondary to the problem they represent for law enforcement in general. Communities where violators ignore their tickets or summonses can have no respect for traffic law enforcing agencies. Even a relatively small non-appearance problem may soon get out of hand because of the general public's ability to sense that they can 'get away with it.' Nor do the evil effects stop there. The honest and law-abiding citizen becomes disgruntled as a result of the story of an acquaintance which convinces him that he is punishing himself unnecessarily by being honorable. Good law enforcement is impossible in the face of such a practice. * * *"

Apart from its highly questionable legal basis, the majority strikes me as being highly unjust. It condemns the practice of giving a man a reward for responding and paying administratively and thus waiving his right to "make a federal court case" out of it and yet it fails to take into account that it in turn is rewarding irresponsibility. The record here discloses a shameless attitude. It indicates the defendant either calculated all

of the hazards and disobeyed the laws notwithstanding the presumption of their validity or that he recklessly and wantonly ignored the alleged violations. His culpability is extreme in either case. Notwithstanding the complete lack of responsibility, the majority goes out of its way to discover and open up an escape loophole which will permit him to avoid penalty. Noteworthy also is the fact that the majority opinion contains no single word of censure and from this it can be concluded it encourages people to follow a line that was taken by this defendant. The decision, therefore, strikes a severe and serious blow to law enforcement and to responsibility to law.

Both the Municipal and the Superior Courts discharged their duties with commendable restraint.

In my opinion, the judgment of the Municipal Court should be affirmed.

MR. JUSTICE MOORE joins in this dissent.